**UNITED· STATES v. DE PORCERI et al.**
**No. 230, Docket 20563.**

Circuit Court of Appeals, Second Circuit.
May 7, 1947.

Ben Herzberg, of New York City, for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Silvio J. Mollo, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendants were indicted upon the following counts: (1) For demanding of one Mrs. Bellew as rent for the occupancy of an apartment at 935 Park Avenue, New York City, for one year, the amount of $1900, payable in advance, in violation of Rent Regulations for Housing; for receiving from Mrs. Bellew such amount of rent in advance; for demanding from Mrs. Bellew, as rent for the apartment, $1,900 payable in advance, and the amount of $10,000 as additional rent, the total of said sums being an amount higher than the maximum price permitted under the Rent Regulations; (4) for receiving from Mrs. Bellew $1,900 and $9,500 for rent of the apartment for one year. The defendants have appealed from a judgment of conviction on each of the four counts. We affirm as to all four counts.

On August 28, 1946, the defendants obtained a lease of Apartment B on the 11th floor of the building known as 935 Park Avenue, in the Borough of Manhattan, City of New York, for the term of one year to commence on the 1st day of October, 1946, at an annual rental of $1,900 payable in advance. The lease was executed by the company owning the building and contained a clause permitting an assignment of it by the defendants. The latter had a bill of $2,000 against one Dr. Lengyel for services as real estate brokers in connection with the purchase of the building by Dr. Lengyel, who had acquired the property in the name of the corporation, which sum of $2,000 he was then unable to pay in cash. The defendants accepted the lease of the apartment in payment of the indebtedness to them. On September 16, 1946, they assigned the lease to Mrs. Bellew, who wished to rent the apartment, under an agreement to pay them $1,900 in advance for the year's rent. There was evidence that Mrs. Bellew was required to pay the defendants an additional sum of $10,000 for furniture—which they were to procure for the apartment—as a condition of obtaining the assignment of the lease. Preliminary negotiations were followed by delivery to Mrs. Bellew of the assignment of the lease and payment by her of $1,900 by check and $9,500 in cash (a conceded reduction for the furniture to be supplied). Two agents of the OPA, who were in waiting, witnessed the various steps in the transaction and arrested the defendants for violation of the rent regulations. DePorceri gave up the $9,500 in cash which had been paid to him by Mrs. Bellew, and the $1,900 for which she had given her check. There was testimony that DePorceri stated that the $9,500 was a bonus which he was to

divide with his "partner Bialek," and that Bialek said, on the same occasion, that the check was to go one-half to the owner of the building, and the remainder to be divided between himself and DePorceri.

Section 13(10) of the Rent Regulations relating to Housing, New York City Area, has defined "rent" as follows:

"(10) 'Rent' means the consideration, including any bonus, benefit, or gratuity demanded or received .for or in connection with the use or occupancy of housing accommodations or the transfer of a lease of such accommodations."

The foregoing subdivision includes any. payments received from an occupant of premises in consideration for the assignment of a lease as "rent." Counts 1 and 3 charge the defendants with demanding and receiving $1,900 as rent in advance for one year .in violation of Section 2(d) of the Regulations, which is as follows:

"(d) Security deposits—(1) General prohibition. Regardless of any contract, agreement, lease or other obligation heretofore or hereafter entered into, no person on or after September 1, 1944 shall demand or receive a security deposit for or· in connection with the use or occupancy of housing accommodations within the Defense-Rental Area or retain any security deposit received prior to or on or after September 1, 1944 except as provided in this paragraph (d). The term 'security deposit,' in addition to its customary meaning, includes any prepayment of rent except payment in advance of .the next periodic installment of rent for a period no longer than one month but shall not include rent voluntarily prepaid subsequent to possession by a tenant under a written lease for his own c )nvenience.

"(2) Maximum rent established under section 4(a) or (b). Where the maximum rent of the housing accommodations is or initially was established under section 4(a) or (b), no security deposit shall be demanded, received, or retained except in the amount (or any lesser amount) and on the same terms and conditions (or on terms and conditions' less burdensome to the tenant) provided for in the lease or other rental agreement in effect on the date de-

termining the maximum rent established under section 4(a) or (b)."

It is clear from the foregoing Regulations that it can make no difference, when the lease was transferred to Mrs. Bellew, that rent had already been paid under that lease by her assignors, for the Regulations clearly provided that the consideration she furnished for the transfer was under the definitions "rent," and that it could not be paid in advance. In the face of the clear language of the Regulations we can see no basis for invoking the decision of the Supreme Court in M. Kraus & Bros. v. United States, 327 U.S. 614, 66 S.Ct. 705.

The defendants argue that the government must fail on Counts 1 and 3 because it did not negative the exception in Section 2(d) (2) quoted above by introducing the lease in effect on March 1, 1943, and showing that the prepayment demanded by the defendants of Mrs. Bellew exceeded the rent provided for in the lease of March 11, 1943. The defendants, however, had the burden of bringing themselves within the exception as a matter of defense. McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; United States v. Van Den Berg, 7 Cir., 139 F.2d 654, 656. Moreover, it seems that they would be likely to have readier access to the facts concerning the terms of such a lease, if there ever was one, than the government.

In his charge to the jury the judge made the following statement as to Counts 2 and 4:

"You will see that the term 'rent' is very broad and includes not only any bonus payment but also includes all consideration for or in connection with the use or occupancy of an apartment such as this.

"If you believe from the evidence that in addition to the sum of $1900 the defendants demanded and required as a condition of the rental that Mrs. Bellew purchase furniture and pay cash therefor of $9500 in order to rent the apartment, and as. a condition of the rental of such apartment, such sum of $9500 would constitute additional consideration or rent above and

beyond the ceiling rental of $2000 per year in violation of the law.

"When a tenant who desired to rent an apartment in addition to paying a stipulated rent must buy furniture in order to rent the apartment and the landlord so demands and requires this as a condition of the rental without the prior written consent of the Office of Price Administrator, the amount paid for such furniture constitutes additional consideration or rent, and if the total price of both the rent and the cost of the furniture exceeds the established ceiling price there is a violation of the law."

"Section 9(b) of the regulation provides as follows:

" 'No person shall require a tenant or prospective tenant to purchase or agree to purchase furniture or any other property as a condition of renting house accommodations unless the prior written consent of the Administrator is obtained.'

\*　　\*　　\*　　\*　　\*　　\*

"This means that when a person owns an apartment and wants to require his prospective tenant to purchase his furniture as a condition of renting such apartment, he first goes to the OPA Administrator and makes application for the approval of such a tie-in sale. If the OPA approves he can then sell the furniture as a part of the rental. But if he sells the furniture before getting prior approval of the OPA Administrator and requires the purchase of the furniture as a condition of the rental then such sale is in violation of the law and the amount received for the sale of said furniture constitutes rent and the total amount received for the furniture plus the amount paid for the apartment must not exceed the ceiling rental of the apartment."

■ It is argued on behalf of the defendants that under Counts 2 and 4 they were charged with violation of Section 2 (a), and not Section 9(b), of the Regulations, and that therefore a fatal variance existed in the government's proof when it was directed to establishing a violation of Section 9(b). This contention is plainly without substance. Both counts set forth the facts relied on and alleged that defendants violated "Rent Regulations for Housing." The Emergency Price Control Act authorized the Administrator to issue regulations not only to prohibit excessive rents, but also to prevent evasions. 50 U.S.C.A. Appendix, § 902(a) and § 902(g). Section 9, subdivisions (a) and (b) of the Regulations were promulgated to effectuate the latter purpose. [1]

■ The defendants excepted to the charge on the ground that their negotiation with Mrs. Bellew was at no time "beyond the conditional stage," their offer being only for "transmittal to Dr. Lengyel." But the Judge corrected any failure to instruct the jury adequately as to the particular defense that the check for $1900 and the $9500 in cash were received in escrow—and not as final payments—by the following statement in answer to the criticism of his charge:

"Counsel have called to my attention that I overlooked to call to the jury's attention one of their defenses or theories, to wit, that no demand, the 'defendants say, was made by either defendant as charged in the indictment, but that an offer was made by Mrs. Bellew in connection with this rental and at no time was the negotiation beyond the conditional stage, so the defendants claim. And that the check and money was received conditionally and as escrow agents by the defendants, the defendants say. Furthermore in my charge apparently I

---

[1] "Sec. 9. Evasion—(a) General. The maximum rents and other requirements provided in this regulation shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of housing accommodations, by way of absolute or conditional sale, sale with purchase money or other form of mortgage, or sale with option to repurchase, or by modification of the practices relating to payment of commissions or other charges or by modification of the services furnished with housing accommodations, or by tying agreement, or otherwise.

"(b) Purchase of property as condition of renting. Specifically, but without limitation on the foregoing, no person shall require a tenant or prospective tenant to purchase or agree to purchase furniture or any other property as a condition of renting housing accommodations unless the prior written consent of the Administrator is obtained."

530

said to you that the defendants endeavored to sell and did sell this furniture to Mrs. Bellew. I don't recall making any such statement to the effect that this furniture was ever sold to Mrs. Bellew. I don't remember making any such statement like that. However, if I did, you may disregard it.

"(To counsel) Does that cover what you had in mind?

"Mr. Combs: It covers the points that I requested.

"The Court: That is what I mean."

The defendant Bialek further assigns error because of the admission as against him of testimony by Sergeant Fitzpatrick that DePorceri said he was "going fifty-fifty with my partner, indicating Bialek." Upon objection to this evidence by Bialek's counsel, and its admission by the court on the ground that the statements were made in the presence of Bialek, Fitzpatrick continued his testimony thus:

"* * * I then turned back to DePorceri again, and I said to him, 'Where is the check?' He said, 'It is in the envelope.'

"I then extracted the check from the envelope and I said, 'What were you going to do with this?'

"Bialek then spoke up and said that was his and that he was going to give half of that check to the owner of the building and the remaining half of the check was going to be divided between DePorceri and himself, who were partners. I then asked Bialek for identification as to who he was. He then produced a business card with an address on Fifth Avenue."

This was not a case where the statements about Bialek in his presence became admissible because of his silence. Whether or not they would have been admissible against Bialek if he had said nothing, in the situation we are dealing with he voluntarily injected himself into the conversation and said that he had a share in the rent check. Rules applicable to admissions by silence are not pertinent. In our opinion there was no error in allowing the testimony as against Bialek under such circumstances.

Judgment affirmed on all counts.