**KOLAR et al. v. WOODS, Housing Expediter.**

**No. 13247.**

United States Court of Appeals, Fifth Circuit.

June 15, 1951.

Claude L. Gray, Dorothea Watson, Orlando, Fla., for appellant.

Francis X. Riley, Special Litigation Atty., Louise F. McCarthy, Ed Dupree, Gen. Counsel, and Leon J. Libeu, Asst. Gen. Counsel, Office Housing Expediter, all of Washington D. C., for appellee.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

This action was brought by Tighe E. Woods, Housing Expediter, on April 17, 1948, against the defendants, John F. Kolar and E. R. Boyd, for an injunction and restitution of alleged rent overcharges, pursuant to the Emergency Price Control Act of 1942 and the Housing and Rent Act of 1947, as amended. Title 50 U.S.C.A. § 901 et seq.; Title 50 U.S.C.A. § 1881 et seq.

The complaint charged that during the period from March 15, 1946 to January 19, 1948, defendants collected $50 per month on certain rental property located at 914 Glendonjo Drive in the Orlando, Florida Defense-Rental Area, on which the maximum rent as established by regulation was $22 per month. It was further alleged that a portion of this rent overcharge was obtained by means of a bonus or "tie-in" arrangement, whereby the tenant was forced to buy certain worthless stock at stipulated monthly payments.

Defendants, in answer, denied the alleged overcharge, and the existence of any bonus or "tie-in" arrangement increasing the maximum legal rent. They made demand for a jury trial which was denied by the trial court on the ground that the action was solely in equity.

Briefly stated, the evidence reveals that the tenant, J. R. Roush, moved into the premises in question about October of 1941, and that Mrs. Katherine Cheesebrough then owned the property and was his landlady at that time. Roush thereafter paid the maximum allowable rent of $22 per month to Mrs. Cheesebrough until her death in the year 1946, after which he made a payment to the First National Bank of Orlando, as trustee of her estate.

Roush met the defendant Boyd in March, 1946, when Boyd moved into the premises vacated by Mrs. Cheesebrough. Boyd refused to accept any rent from Roush or to discuss the rent with him, but referred him to the defendant Kolar for this purpose. Roush later met Kolar and tendered him the amount of rent legally due, but Kolar refused to accept it, stating that they could not afford to rent the property for the OPA ceiling price, or words to that effect. Roush thereupon offered to go to the OPA, and stated that he would be willing to pay $35 per month rent. Kolar advised him to stay away from the OPA office upon pain of eviction. Thereafter, Kolar outlined the stock transaction whereby Roush would be required to pay $25 per month on the stock and $25 per month rent. Roush later gave Kolar a payment

of $150, for which he obtained a receipt which read $75 for stock and $75 for rent This $150 actually represented rent past due for the months of March, April and May, 1946, since the agreement for increasing the allowable rent under guise of the stock transaction was not concluded until June, 1946. Roush continued to pay $50 per month rent in the above fashion until July, 1947.

It is without dispute that the stock purportedly sold to Roush under the bonus or "tie-in" arrangement was stock in the obsolete and bankrupt Federal Adding Machine Corporation, and that it was of no value. Roush testified that the stock was never delivered to him, and that he never even saw it. His wife corroborated his testimony as to the stock transaction, and further testified that they had to agree to the subterfuge or suffer eviction from the premises.

 The legal maximum rent of $22 per month on the property in question was established by the introduction into evidence of the OPA registration statement from the area rent office files. The witness, Charles P. Jerome, testified that he was employed in the local area rent office as Rent Examiner and Compliance Negotiator, and that his duties included supervision over the files in that office; that he did not recognize the signature on the registration statement in controversy or have any knowledge as to whether Mrs. Cheesebrough had then owned the property; that he knew the registration statement had been filed in 1941, for the reason that if it had been filed later it would have borne the date of filing. It appears on the face of the registration statement, however, that it applies to the identical premises in question; that it purports to bear the signature of Katherine Cheesebrough, the former owner of the premises; that it further bears a serial number and is stamped, "Registered Area Rent Office OPA"; that the name of the tenant, Roush, for whom restitution is here sought, also appears on the registration statement, but that the names of the defendants, Kolar and Boyd, are not listed thereon for the reason the state-

ment was filed before they acquired ownership of the property.[1]

■ We are of opinion substantial evidence supports the trial court's finding that defendants have violated the rent control Acts in the manner charged. It has been repeatedly held that any scheme or subterfuge, such as the stock transaction here, whereby a tenant is forced to pay more than the maximum legal rent for his premises upon pain of eviction, is in violation of the Act and the regulations issued thereunder. Woods v. Turner, 10 Cir., 172 F.2d 313; Edwards v. Woods, 8 Cir., 168 F.2d 827; United States v. DePorceri, 2 Cir., 161 F.2d 526; Woods v. Schwartz, D.C., 88 F.Supp. 385.

■■ We find no merit in the contention that the trial court erred in admitting the registration statement into evidence as *prima facie* proof of the maximum legal rent on the premises in question. Where, as here, no evidence is offered to dispute their authenticity and genuineness, there is a presumption of regularity which attaches to the official acts and records of a public office and sustains their competency. Woods v. Tate, 5 Cir., 171 F.2d 511; Woods v. Turk, 5 Cir., 171 F.2d 244; Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566; Morgan v. United States, 5 Cir., 149 F.2d 185; Cf. Woods v. Swank, 5 Cir., 170 F.2d 885.

■ We further find substantial evidence in the record in support of the finding that the stock was sold to the tenant Roush as a condition of his renting the premises, and that the entire transaction was a bad faith measure to evade the rent regulations. Silverman v. Woods, 5 Cir., 173 F.2d 896; Brown v. Schwartz, 5 Cir., 164 F.2d 151; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Affirmed.

---

1. When they acquired the property, defendants were charged with the responsibility of ascertaining the existence and terms of the prior OPA registration statement establishing the maximum legal rent allowable for the premises. Woods v. Tate, 5 Cir., 171 F.2d 511; Woods v. Macken, 4 Cir., 178 F.2d 510, 511; 10 F.R. 5089. All OPA registration statements remain legally effective until changed by subsequent adjustment or order of the Administrator, and a landlord cannot change the registration affecting his property by merely filing another registration statement. Woods v. Macken, 4 Cir., 178 F.2d 510, 511.