## McKELVEY ET AL. v. UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 106. Argued November 21, 1922.—Decided December 4, 1922.

1. An indictment founded on a general statutory provision defining the offense need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere. P. 356.

2. The third section of the Act of February 25, 1885, c. 149, 23 Stat. 321, providing that " no person, by force, threats, intimidation or by any fencing or inclosing, or any other unlawful means, . . . shall prevent or obstruct free passage or transit over or through the public lands," applies to transient acts of force and intimidation as well as continuing obstacles such as a fence or the maintenance of an armed patrol. P. 357.

3. Punishment for offenses defined by the above act is not confined by the fourth section to persons acting as " owner, part owner or agent." P. 357.

4. Congress has power to punish intentional obstruction to free passage over the public lands within a State accomplished by acts of violence, and its exercise works no interference with the power of the State to punish the acts of violence as such. P. 358.

273 Fed. 410, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals, affirming a conviction in the District Court under an indictment for unlawful prevention and obstruction of free passage over the public lands.

*Mr. Solon B. Clark,* with whom *Mr. Ralph W. Adair* and *Mr. Chase A. Clark* were on the brief, for petitioners.

*Mr. H. L. Underwood,* with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

The five petitioners were indicted, tried and convicted in the District Court of the United States for the District

of Idaho upon a charge of unlawfully preventing and obstructing, by means of force, threats and intimidation, free passage over and through certain unoccupied public lands of the United States by designated persons,—they being the three employees hereinafter mentioned. The Circuit Court of Appeals affirmed the judgment. 273 Fed. 410. A writ of certiorari brings the case here.

The record purports to contain the substance of the evidence in chief presented by the United States, but not the evidence produced by the defendants nor that of the United States in rebuttal. That which it does contain tends strongly to establish the following case:

In August, 1919, the owners of a band of sheep then about 30 miles northwest of Mackay, Idaho, committed to three employees the task of driving the sheep to a range on the other side of Mackay. A part of the route lay over unoccupied public lands of the United States in relative proximity to a stream, called Lost River. In that vicinity there were two well-known trails. One, recently established,[1] passed on the east side of the river, and the other, theretofore used by the owners of the sheep, passed on the west side. The employees took the latter trail and, while following it in the usual way of driving sheep, were met by some of the defendants, who insisted that the lands thereabouts were used as a cattle range and demanded that the sheep be not driven along that trail, but taken to the trail on the other side of the river, four or five miles away. This occurred about eleven o'clock in the forenoon of August 25th, when it was very warm. One of the employees answered that the sheep should be permitted to rest until it became cooler and that they could not be taken across the river without an order from one of the owners. Such of the defendants as were present then pointed out a place where the sheep could be held

---

[1] Presumably under § 10 of the Act of December 29, 1916, c. 9, 39 Stat. 862.

in the shade and went away. About four o'clock in the afternoon some of the defendants returned and demanded that the sheep be moved to the other side of the river right away. To this the answer was made that instructions had been received, presumably by telephone, from one of the owners to await his coming, which would be later in the day. One of the defendants then requested his comrades to line up with their rifles, which they did, whereupon he proceeded to make a hostile demonstration against one of the employees and to chase him about, obviously as a matter of intimidation. These defendants then went away. That evening one of the owners arrived and directed that the driving be continued along the trail on which the employees were proceeding,—it being " the trail we always used" and " about three miles wide." Early the next morning, before the employees started the sheep again, one of the defendants returned and inquired what was going to be done and, on learning what the owner had directed, said: " You can't go through there." " Something will happen to you this morning." "Are you willing to take the consequences? " This defendant then rode away and a little later others of them rode up on a gallop, ordered the employees to put up their hands, which was done, and then began shooting. They shot and seriously injured one of the employees, threatened to finish him, and did other things calculated to put all three in terror. The defendants then moved two of the employees and the sheep to the other side of the river and took the wounded employee to a hospital. While some of the defendants were present at one time and some at another, the circumstances were such that what was done was the act of all. The lands through which this trail extended and over which the employees intended to drive the sheep were unoccupied public lands of the United States. The purpose of the defendants in all that they

did was to prevent the employees from proceeding with the sheep over those lands. The lands were comprised in two townships, each six miles square, and within these townships were several small tracts—a minor part of the whole—which were claimed and held by individuals under the public land laws; but the trail did not pass over these small tracts nor were the employees driving or intending to drive the sheep over them.

The indictment was founded on §§ 3 and 4 of the Act of February 25, 1885, c. 149, 23 Stat. 321, which read as follows:

"Sec. 3. That no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: *Provided,* This section shall not be held to affect the right or title of persons, who have gone upon, improved or occupied said lands under the land laws of the United States, claiming title thereto, in good faith.

"Sec. 4. That any person violating any of the provisions hereof, whether as owner, part owner, agent, or who shall aid, abet, counsel, advise, or assist in any violation hereof, shall be deemed guilty of a misdemeanor, and fined in a sum not exceeding one thousand dollars and be imprisoned not exceeding one year for each offence."

The indictment was challenged on several grounds by a demurrer and a motion in arrest of judgment, both of which were overruled; and error is assigned on these rulings.

One ground of objection is that the indictment contains no showing that the accused were not within the excep-

tion made in the proviso to § 3. This is not a valid ground. By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere; and that it is incumbent on one who relies on such an exception to set it up and establish it. *Schlemmer* v. *Buffalo, Rochester & Pittsburg Ry. Co.*, 205 U. S. 1, 10; *Javierre* v. *Central Altagracia*, 217 U. S. 502, 508, and cases cited.

Another ground is that the words of § 3, "or shall prevent or obstruct free passage or transit over or through the public lands," refer to a continuing obstacle to passage or transit in general, such as a fence or the maintenance of an armed patrol, and not to a transient obstacle to passage or transit by particular persons on a particular occasion, such as is charged here. We think this ground is not tenable. The words "by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means" are as comprehensive of transient means of obstruction as of continuing or relatively permanent means. Besides, it is "free" passage or transit that is to be unobstructed. Passage or transit is free in the sense intended when it is open to all. When some withhold it from others, whether permanently or temporarily, it is not free.

A third ground is that under § 4 the only punishable offenses are those wherein the offender acts as owner, part owner or agent, and that this indictment does not show that any of the defendants were so acting. This ground is without merit. While § 4 is not happily worded, there is no difficulty in getting at its meaning. It is the penal section and broadly fixes the punishment for the several acts made unlawful by the other sections.

Some of the proscribed acts involve an assertion of a groundless right to the exclusive use and occupancy of public lands, a right which the offender might be asserting in his own behalf, or in behalf of himself and another, or in behalf of others whom he serves as agent. But in several of the proscribed acts there is no such element. The offense charged here is of the latter class. With this understanding of the acts made unlawful by the other sections, it is apparent that the words " whether as owner, part owner, agent " in § 4 are intended merely to make sure that offenders acting as owners, part owners or agents are brought within the penal provision, and not to exclude other offenders therefrom or to absolve them from punishment.

It also is contended that § 3, when construed as we construe it, transcends the power of Congress and encroaches on the police power of the States. This contention proceeds on the assumption that the section, so construed, deals with acts of personal violence which do not affect the public lands or the rights of the United States in them. But this is a mistaken assumption. The section in terms, and as we construe it, deals with the obstruction by unlawful means of free passage over the public lands. It makes no attempt at dealing with acts of personal violence as such. Only when and as they are made the means—resorted to for the purpose—of effecting the prohibited obstruction does it take any account of them. The power of the State to deal with and punish them is not affected. Such acts may be an ingredient of an offense against the United States and also in themselves an offense against the State. The following excerpt from *Moore* v. *Illinois,* 14 How. 13, 20, is pertinent:

" The same act may be an offence or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offence against the United States,

for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the State, a riot, assault, or a murder, and subject the same person to a punishment, under the State laws, for a misdemeanor or felony. That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable."

It is firmly settled that Congress may prescribe rules respecting the use of the public lands. It may sanction some uses and prohibit others, and may forbid interference with such as are sanctioned. *Camfield* v. *United States,* 167 U. S. 518, 525; *United States* v. *Grimaud,* 220 U. S. 506, 521; *Light* v. *United States,* 220 U. S. 523, 536; *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 404–405. The provision now before us is but an exertion of that power. It does no more than to sanction free passage over the public lands and to make the obstruction thereof by unlawful means a punishable offense.

It also is settled that the States may prescribe police regulations applicable to public land areas, so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments. Among the regulations to which the state power extends are quarantine rules and measures to prevent breaches of the peace and unseemly clashes between persons privileged to go upon or use such areas.

Two regulations of the latter type by the State of Idaho have been sustained by this Court,—one making it unlawful to herd sheep or permit them to graze within two miles of the dwelling house of another having a possessory claim to the land whereon the house stands, *Bacon* v. *Walker,* 204 U. S. 311, and the other making it unlawful to herd sheep or permit them to graze on a range which

by prior usage has come to be a cattle range, *Omaeche-varria* v. *Idaho,* 246 U. S. 343. As construed by the Supreme Court of the State, these regulations are not intended to cover the driving of sheep from one range to another, nor such occasional grazing as is done by the sheep while being driven or during temporary stops for needed rest or similar purposes. In view of the instructions to the jury in this case the verdict must be taken as finding that there was no herding or grazing here which was forbidden by these regulations.

Complaint is made of several rulings on the trial, but we think all were right. As to some the complaint is disposed of by what has been said, and as to the others it is so wanting in substance that it does not call for special notice.

*Judgment affirmed.*