## UNITED STATES NAV. CO., Inc., v. CUNARD S. S. CO., Limited, et al.

District Court, S. D. New York.
Dec. 11, 1929.

Rumsey & Morgan, of New York City, for plaintiff.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City, for defendants.

CAFFEY, District Judge.

1. I should like to prepare a reasoned statement fully discussing the interesting question raised by the motion to dismiss the bill. It is impracticable to do that, however, if the matter is to be disposed of seasonably. I shall therefore confine myself to a somewhat summary recital of the grounds on which I base the conclusion I have reached.

The sole issue is of statutory interpretation. So far as I can discover, the pertinent sections of the Shipping Act have not yet been judicially construed.

For convenience, common carriers in foreign commerce (subject to the Shipping Act) will be referred to as ocean carriers; the Shipping Board, as the Board; common carriers in interstate commerce (subject to the Interstate Commerce Act), as land carriers; and the Interstate Commerce Commission, as the Commission.

2. The defendants get no help (save perhaps as indicated in paragraph 9 of this memorandum) from section 15 of the Shipping Act (46 USCA § 814). The exemption thereby of ocean carriers from proceedings under the Sherman Act relates only to (a) agreements, existing at the time of the organization of the Board, which it has not disapproved or (b) agreements, made after the Board was organized, which it has approved.

The bill does not allege, and this court by the exercise of judicial notice cannot learn (see Robinson v. Baltimore & O. R. Co., 222 U. S. 506, 511, 512, 32 S. Ct. 114, 56 L. Ed. 288; Shipping Act, § 24, 46 USCA § 823), whether any agreement with which we are now concerned comes within either of those classes. If it does, the burden of showing the fact is on the defendants and they must plead it in order to benefit by it. McKelvey v. United States, 260 U. S. 353, 357, 43 S. Ct. 132, 67 L. Ed. 301.

I have not overlooked the dates mentioned in the bill. So far as appears therein, the earliest time any act complained of occurred was 1924. That, however, has no bearing on the phase of the matter, arising under section 15, considered in this paragraph. As pointed out in paragraph 9 hereof, the bill is silent as to whether the agreements complained of or memoranda of them have ever been filed with the Board.

3. Disregarding the Shipping Act for the moment, I think the bill states a cause of action under sections 1 and 2 of the Sherman Act (15 USCA §§ 1 and 2), for which section

16 of the Clayton Act (Id., § 26) entitles plaintiff to an injunction.

■ 4. I think also that, despite the fact that the bill does not refer in terms to the Shipping Act, the plaintiff cannot succeed unless it be established that the defendants have violated section 14, 16, or 17, or possibly (in the way explained below) section 15, of that statute (46 USCA §§ 812, 814, 815, 816).

The confederacy to restrain and the attempt to monopolize the carriage of general cargo by vessel, which constitute the gravamen of the bill, seem to me necessarily to charge violations of the Shipping Act (46 USCA §§ 801–806, 808–842). The means alleged to have been employed were unreasonably excessive differentials between contract rates and open or tariff rates, coupled with viciously discriminatory practices in applying the differentials. Shippers, in a variety of ways, were thereby coerced, it is said, to divert general cargoes from the line of the plaintiff to the lines of the defendants. Without a scale of unreasonably high tariff rates or unreasonably low contract rates, the differentials could not have existed as a device.

In the absence of an undue spread between the two classes of rates, certainly the principal items and probably all the items of complaint (embodied in part III of the bill), which describe the offending by defendants against the Sherman Act (15 USCA §§ 1–7; 15) relied on, would not and could not exist. If I be right on this point, then clearly the greater portion, if not all, of the charging part of the bill, though not so labeled, embraces violations of the Shipping Act.

Moreover, even if some of the items in the charging part of the bill do not themselves directly allege violations of the Shipping Act, they at least rest or depend on the premise that, in violation of that act, there exists and is employed the device of maintaining an undue spread between contract and noncontract rates. The things are so inextricably interrelated and interwoven that if the charge of excessive differentials, with the incidental use made of them in forcing joint exclusive contracts into being, were withdrawn, then the essential elements of stating a cause of action under the Sherman Act would go also; it would disappear, of necessity, by the very act of withdrawing the allegations of conduct violative of the Shipping Act.

The spread between the two sets of rates could not exist as the foundation of the device or of the practices assailed by the bill unless the tariff rates were unreasonably high or the contract rates were unreasonably low. It seems to me therefore to follow that a large proportion of, and I believe all that is material in, the charging part of the bill consists of or includes offenses against the Shipping Act. In other words, the device of the undue spread is the means by which the coercion complained of is applied, and by which alone it is capable of being applied, and by which the other misconduct complained of occurs and is rendered possible.

As I understand the position of defendants, they in effect concede that what they denominate violations of the Sherman Act also, in every instance, constitute offenses against the Shipping Act. What follows in this memorandum (subject to what is said in paragraph 11) is based on the assumption that part III of the bill involves only charges which, either directly or incidentally, are or depend upon violations of the Shipping Act.

■ 5. It is clear that, disregarding minor immaterial details, the scheme created by the Shipping Act for the regulation of rates and practices of ocean carriers is, in its essential features, the same as that prescribed by the Interstate Commerce Act (49 USCA § 1 et seq.) in the corresponding field for land carriers; also that the functions of the Board under one statute are, in substance, the same as the functions of the Commission under the other statute. It is further indisputable that, as construed by the Supreme Court preceding enactment of the Shipping Act (Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 440–442, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, and cases following it), land carriers could not be successfully sued in the District Court, upon a cause of action identical with that in the instant case, until after resort to and decision by the Commission upon the rates and practices assailed.

What the decision in the instant case should be therefore turns upon whether clauses of the Shipping Act now under examination, with regard to ocean carriers, must have the same meaning as that which previous court decisions had attributed to corresponding clauses of the Interstate Commerce Act with respect to land carriers.

6. Sections 14(a), 17, and 22 of the Shipping Act (46 USCA §§ 813, 816, 821) invest the board with jurisdiction, and when invoked, require it to exercise jurisdiction, of complaints against rates and practices prohibited by the act. Section 22 (Id., § 821) confers upon any person the right to complain to the Board of any violation of the

act, and requires the Board to make an order on every complaint. Sections 29 and 30 (Id., §§ 828, 829) grant to any one injured by violation of an order of the Board free access to a District Court having jurisdiction of the parties for appropriate relief, including injunction.

7. It is hence clear that, in substance and certainly in every aspect relevant to the present controversy, the system prescribed by the Shipping Act for the regulation of and remedies against ocean carriers, in regard to rates and practices condemned thereby which must be passed on before plaintiff can recover in this suit, is identical with that prescribed by the Interstate Commerce Act for the regulation of and remedies against land carriers growing out of similar matters condemned by the latter statute. It follows that the Shipping Act should, as applied to the present case, be given the same meaning. It follows also, consistently with the reasoning of the Supreme Court decisions on questions arising under the Interstate Commerce Act, that this court would trespass upon the domain assigned by statute to the Board if, in advance of application to that body, the bill were allowed to be maintained here.

8. It may be suggested that the express mention of the Sherman Act in section 15 of the Shipping Act (46 USCA § 814) is a manifestation of Congressional design to confine the delimitation of proceedings under the Sherman Act to the particular instances of agreements there dealt with. It may be argued that, inasmuch as the bill does not rest on agreements of that character, the Shipping Act does not oust the court of jurisdiction in cases, like the one at bar, where relief was not first sought from the Board.

Replies may be made in reverse order. In the first place, it will be noted that section 15 goes far beyond delimitation. It renders completely lawful, when made by ocean carriers and of the kind described in the section, agreements which if made by others or of a different kind would be within the condemnation of the Sherman Act. In the second place, along with the canon of statutory interpretation invoked, that the expression of one thing excludes all others, stands another canon, equally familiar, that where Congress in a later statute employs words which have been previously judicially construed, it will be presumed that it was the legislative intent to use them with the same meaning in the later statute.

After all, the meaning of a statute is to be ascertained from the language in its entirety and from consideration of the purposes aimed at. The Shipping Act is so nearly identical with the Interstate Commerce Act in the provisions of the former bearing on this case that I cannot escape the feeling that, since within their respective fields the objects of both statutes are precisely the same, these provisions must be given the meaning long previously assigned to them by settled decisions of the Supreme Court in cases which arose, in a variety of circumstances, under the Interstate Commerce Act.

9. Again, it is to be noted that section 15 imposes an obligation, absolute in terms and binding upon all ocean carriers, immediately to file with the Board copies or memoranda of such agreements as those complained of. Failure to do so is a violation of the act. Of that violation plaintiff is entitled to complain to the Board. So, also, the Board has power to make orders directing the filing of agreements of this type. It is not stated whether they have been filed or ordered filed. While I adhere to the view, expressed in paragraph 2 above, that defendants must bring into the case facts showing they are entitled to the protection from the Sherman Act provided in the section if they rely on that as a defense, nevertheless it seems to me with respect to violations of section 15 (46 USCA § 814), as with respect to violations of other sections of the Shipping Act pertinent to the question here, that the court is required to refrain from permitting itself to be used as a forum for litigation about the agreements until after they have been ordered to be filed or have been acted upon by the Board or it has had opportunity to pass upon them in the way contemplated by section 15.

10. It is true that section 16 of the Clayton Act (15 USCA § 26) is still in full force. Nevertheless, in the absence of a violation of the Sherman Act, plainly there can be no recovery in the present suit. Inasmuch as a proceeding under the Sherman Act is not open to the plaintiff because, so far as disclosed by the bill, it has not heretofore sought relief from the Board, it follows that the Clayton Act standing alone affords no ground for relief. In other words, the foundation for resort to the remedy provided by the Clayton Act disappears along with the failure to show the prerequisite to maintaining suit for violation of the Sherman Act.

11. There may be instances alleged in the bill, and possibly the giving of rebates described in paragraph 33 is an actual instance, of violating the Shipping Act not so depend-

ent upon the unreasonableness of rates or the discrimination in practices or upon anything else within the primary province of the Board as to require findings of fact by the Board preceding court proceedings based thereon. If so, however, they do not seem to me to involve such irreparable injury to plaintiff as section 16 of the Clayton Act demands as a condition to injunctive relief. If they exist, the more appropriate remedy is criminal prosecution.

12. What has been said is little more than an indication to counsel of the steps by which I have reached a result. It seems better, however, to issue the memorandum in this form than to postpone announcement of a determination sufficiently long to enable me to frame an extended opinion—partly because (as I assume), in any event, the case must go to an appellate court and the sooner it is in shape for appeal the better for all concerned.

Motion granted.