**UNITED STATES v. MERTINE et al.**

No. 3567c.

District Court, D. New Jersey.

March 4, 1946.

Eugene Schwartz, of Brooklyn, N. Y., for the motion.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., by Grover C. Richman, Jr., Asst. U. S. Atty., of Camden, N. J., opposed.

FORMAN, District Judge.

This matter comes before us on a motion to dismiss a criminal information filed against the defendants Lloyd Mertine and Sam Berg, trading under the firm name of Kings Highway Mountain Line. No formal written motion was filed and counsel agreed that the matter should be submitted as if formal motion to quash the informa-

tion had been filed. Counsel for the defendants incorporated his reasons for his motion in a memorandum handed to the court and that will be filed in lieu of a written motion.

The information is laid under Part II of the Interstate Commerce Act, 49 U.S.C.A § 301 et seq. The first of its six counts charges the defendants with violating § 306(a) in the following language:

"That on, to wit, December 24, 1944, Lloyd Mertine and Sam Berg, defendants, copartners, conducting business under the assumed firm name of Kings Highway Mountain Line, and being engaged in the transportation of passengers for the general public in interstate and foreign commerce by motor vehicle on public highways including those between the points hereinafter set forth, for compensation, unlawfully did knowingly and wilfully engage in an interstate operation on a public highway, in that said defendants did transport 4 passengers by motor vehicle on public highways from New York, New York, to Lakewood, State and District of New Jersey, and within the jurisdiction of this Court, for compensation, to wit, $28, then and there without being in force with respect to said defendants a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such interstate operations; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States. (Title 49, Section 306(a), U.S.Code Annotated)"

The second and third counts are identical with the first except that they refer to transactions on different days.

The fourth, fifth and sixth counts each contain a general allegation that the defendants were common carriers engaged in the "transportation of passengers for the general public in interstate" commerce by motor vehicle on public highways for compensation.

The fourth count specifically charges the defendants with having violated § 315, in that they failed to file with the Commission, insurance or security as required by it, that they would pay any final judgment recovered against them for injuries, death or property damage resulting from their negligent operation of a vehicle as a common carrier.

The fifth count charges substantially that defendants violated § 322(a) in that they failed to require their driver to keep certain records, and the sixth count charges a violation of § 317(d) in that they failed to file with the Interstate Commerce Commission and publish fares or charges applicable to the transportation of passengers.

Section 306(a), the violation of which is the basis of the first three counts of the information in so far as it is relevant here, provides as follows:

"Except as otherwise provided in this section and in section 310a, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * *."

It is also important to note that certain vehicles were excluded from the operation of the provisions of the law (except in so far as requirements for hours of service, safety of operation and standards of equipment are concerned). The portion of the statute that has particular relevance to this case is found in § 303(b) (2) as follows:

"Nothing in this chapter, except the provisions of section 304 relative to the qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (2) taxicab or other motor vehicles performing a bona fide taxicab service, having a capacity of not more than six passengers and not operated on a regular route or between fixed termini, * * *."

It is unnecessary to go into further detail with regard to the sections of the statute underlying the fourth, fifth and sixth counts because they are subjected to the same attacks by the defendants which amount in the aggregate to a motion to quash the entire information for the following reasons:

1. "That each count alleges *facts* which show that the defendants carried on a private livery business and that as private livery operators they are not common carriers.

2. "That each count charges the defendants with an operation which is specifically excluded from the provisions of Title 49 U.S.C.A. and more specifically by Section 303(b) which reads as follows:

" 'Nothing in this chapter * * * shall be construed to include

" '(2) taxicabs or other motor vehicles performing a bona fide taxicab service having a capacity of not more than six passengers and not operated on a fixed route or between fixed termini.'

3. "Each count fails to show FACTS that the operation is not one excluded from the provisions of Title 49 U.S.C.A. and more especially paragraph b of Section 303 of Title 49 U.S.C.A."

Under the first contention of the defendants they submit that the government has failed to describe them as common carriers within the meaning of the law and urge that the information discloses that the defendants carried on a "private livery" business, and, as such, were not common carriers.

The defendants rely on the following comment of the United States Supreme Court in the case of Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984, Ann.Cas.1916D, 765, to support their theory:

"The rest of the plaintiff's business, amounting to four tenths, consists mainly in furnishing automobiles from its central garage on orders, generally by telephone. It asserts the right to refuse the service and no doubt would do so if the pay was uncertain, but it advertises extensively, and, we must assume, generally accepts any seemingly solvent customer. Still, the bargains are individual, and however much they may tend towards uniformity in price, probably have not quite the mechanical fixity of charges that attends the use of taxicabs from the station and hotels. There is no contract with a third person to serve the public generally. The question whether, as to this part of its business, it is an agency for public use within the meaning of the statute, is more difficult. * * * Although I have not been able to free my mind from the doubt, the court is of the opinion that this part of the business is not to be regarded as a public utility. * * * In the absence of clear language to the contrary it would be assumed that an ordinary livery stable stood on the same footing as a common shop,

and there seems to be no difference between the plaintiff's service from its garage and that of a livery stable. It follows that the plaintiff is not bound to give information as to its garage rates." 241 U.S. at pages 255, 256, 36 S.Ct. at page 584.

Today there can be no controversy about the definition of a common carrier under Part II of the Motor Carrier Act for the meaning has been made plain by the following language:

"The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, * * *." 49 U.S.C.A. § 303(a) (14).

See cases and authorities cited in Rathbun v. Ocean Accident & Guarantee Corp., 299 Ill. 562, 132 N.E. 754, 19 A.L.R. 140; Cushing v. White, 101 Wash. 172, 178, 172 P. 229, L.R.A.1918F, 463, and Fordham Bus Corp. v. United States, D.C., 41 F. Supp. 712, 717.

For the purpose of this motion we are limited to the face of the information and all of the facts therein must at this time be accepted as true. United States v. Cook, 17 Wall. 168, 178, 21 L.Ed. 538; United States v. Van Auken, 96 U.S. 366, 24 L.Ed. 852; Knoell v. United States, 3 Cir., 239 F. 16.

Upon the argument defendants injected extraneous facts designed to show that they employed certain types of vehicles, the seating arrangement thereof and the forms of contracts for hire into which they entered with the persons applying for their service. Such matters cannot be considered on this motion. United States v. Tot, D.C., 36 F.Supp. 273; United States v. Empire Hat & Cap Mfg. Co., D. C., 47 F.Supp. 395. It may be that in their affirmative defense to the information the defendants can introduce evidence to bring them within the stated exceptions in the Act but there is no basis for such presentation now.

We have only to examine the charges of the information and measure the language used therein by the statutory enactment of the Congress, § 303(a) (14), to determine whether the government has sufficiently described the defendants and their operations so as to bring them within

the definition of the statute. We find every material element contained within that definition, to be properly alleged in the information, and therefore we cannot agree with the first contention of the defendants.

In so far as the second contention is concerned, under the reasoning employed in our treatment of the first contention, we must conclude that the defendants err when they argue that they are charged in the information with "an operation which is specifically excluded from the provisions of Title 49 U.S.C.A., &c."

We are left with only the third contention of the defendants which we understand to be a claim that the government was required to specifically negate the fact that they came within the exceptions provided in the statute. Some substance appears to be loaned to their argument by the case of United States v. English, 5 Cir., 139 F.2d 885. In that case the court considered that the introductory clause of section 306(a), viz., "Except as otherwise provided in this secton and in section 310a * * *," constituted a deliberate act upon the part of Congress to compel a construction that the exceptions referred to should be read into the affirmative definition of the offense. The court concluded that such exceptions were a part of the enacting clause of the statute and so bound together with the offense defined that the essential ingredients thereof may not adequately be described without a negation of them. The court therefore upheld a motion to quash the information.

The only exception contained within the body of § 306(a) treats of carriers who are entitled to "grandfather" rights. Generally § 310 concerns itself with the dual holding of certificates and permits by contract carriers. The defendants did not direct their arguments to the limitations contained in § 306(a). They contend that their exemption as taxicab operators under § 303(b) (2) should have been negatived in the information. The English case, supra, gives no support to such a contention.

In addition to that of taxicabs many classifications of motor vehicles and their operation are given immunity in the last mentioned section such as motor vehicles employed solely in transporting school children and teachers, motor vehicles used exclusively for the transportation of hotel patrons between hotels to railroad stations, etc. Any contention that each of these many exceptions should be individually negatived in an information alleging violations of this law cannot be given serious consideration.

In Krause v. United States, 8 Cir., 267 F. 183, a somewhat similar proposal elicited the following comment by the court:

"The exceptions, of which there are many in favor of various classes of persons, are not inherently a part of the statutory definition of the offense. They are exceptions to the general prohibition, as their designation naturally signifies, and whether a person is or is not within them is largely within his own peculiar knowledge. It appears from the information that the accused obtained and used the interstate transportation of himself as a passenger by falsely representing himself as the owner of the carload of live stock. It was no more necessary to allege that he was not in some other sense a caretaker than it was specifically to negative his membership in each and all of the other excepted classes. On the face of the information the transportation was free transportation unlawfully used in the sense of the statute." Page 184 of 267 F.

The governing principle seems to be stated in the case of McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301, where the court said:

"By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." 260 U.S. at page 357, 43 S. Ct. at page 134.

The doctrine was further supported in the case of Edwards v. United States, 312 U.S. 473, 482, 61 S.Ct. 669, 85 L.Ed. 957. See also United States v. Mendelsohn, D.C., 32 F.Supp. 622.

We therefore find the information sufficient. The motion to quash must be overruled and the defendants are directed to plead.