## FIPPIN et al. v. UNITED STATES.
### No. 11508.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1947.

James F. Boccardo, of San Jose, Cal., for appellant.

Miles N. Pike, U. S. Atty., and Bruce R. Thompson and Wm. J. Kane, Asst. U. S. Attys., all of Reno, Nev. for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

On October 4, 1945, acting under the authority of Title I of the First War Powers Act,[1] the President issued an Executive Order, Executive Order No. 9638, 50 U.S. C.A.Appendix, § 601 note (10 F.R. 12,591) which terminated the existence of the War Production Board and transferred all its functions and powers to another agency created by the same Order, the Civilian Production Administration. The new agency was directed to use the functions and powers transferred to it by this Order "to further a swift and orderly transition from wartime production to a maximum peacetime production * * * and to that end shall * * * (a) expand the production of materials which are in short supply, (b) limit the manufacture of products for which materials or facilities are insufficient, (c) control the accumulation of inventories so as to avoid speculative hoarding and unbalanced distribution which would curtail total production, (d) grant priority assistance to break bottlenecks which would impede the reconversion process, (e) facilitate the fulfillment of relief and other essential export programs, and (f) allocate scarce materials and facilities necessary for the production of low-priced items essential to the continued success of the stabilization program of the Federal Government."[2]

Thereafter the Civilian Production Administration acting under the authority of the Second War Powers Act[3] in "the fulfillment of requirements for the defense of the United States" issued Veterans' Hous-

---

[1] 50 U.S.C.A.Appendix, § 601. " * * * The President is hereby authorized to make such *redistribution of functions* among executive *agencies* as he may deem necessary, including any functions, duties, and powers *hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer,* in such manner as in his judgment shall seem best fitted to carry out the purposes of this title and to this end is authorized to make such regulations and to issue such orders as he may deem necessary * * *." [Emphasis supplied.]

[2] Paragraph 3 of Executive Order 9638, supra.

[3] 50 U.S.C.A.Appendix, 633, Sec. 2(a) (2).

"Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense. * * *

"(8) The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe."

ing Program OrderNo. One (hereinafter referred to as VHP-1) on March 26, 1946. This Order (VHP-1) forbade all construction (with certain minor exceptions not applicable here) begun after March 26, 1946 unless authorized by the local agency of the Civilian Production Administration.[4]

On or about May 1, 1946, appellants, Chester Fippin and the St. Claire Corporation, began, and thereafter continued without such authorization from the Civilian Production Administration, the construction of the "Tahoe Sky Harbor Casino" in the state of Nevada. Since under the Second War Powers Act the wilfull violation of any Order issued thereunder is a misdemeanor,[5] appellants were charged with violation of the Order by an information consisting of two counts. The information set forth VHP-1 in general terms, and in the first count charged that the defendants (appellants here) "on or about May 1, 1946, without the authorization of the Civilian Production Administration, wilfully did begin the construction of commercial buildings * * * subsequently known as 'Tahoe Sky Harbor Casino', and that the cost of said commercial buildings was approximately Forty Thousand Four Hundred Five Dollars and Eighteen Cents ($40,405.18), the same being new construction of the type prohibited by the aforesaid Order VHP-1, and was * * * in excess of the One Thousand Dollar ($1,000.00) exemption provided by * * * said order."

The second count realleged all of the allegations of the first count save that it charged only that the defendants "wilfully did carry on and participate in the construction of commercial buildings." At the trial, the first count was dismissed upon the motion of the Government, and appellants entered a plea of nolo contendere as to the second. The district judge then entered judgment fining appellant Chester Fippin $1,500.00, and appellant St. Claire Corporation, $6,000.00. Appellants appeal from that judgment.

---

4 "VHP-1 General Restrictions on Construction and Repairs * * *

"§ 4700.1 * * * In order to carry out the Veterans' Emergency Housing Program, this order forbids the beginning of construction and repair work on buildings and certain other structures without specific authorization under paragraph (h) of the order, with the exception of certain small jobs and other work covered by paragraphs (d), (e) and (f). The restrictions of the order apply whether or not the materials needed are on hand or are available without priorities assistance."

"(c) Prohibited Construction. (1) No person shall begin to construct, to repair, to make additions or alterations to, to improve, to convert from one purpose to another, or to install or to relocate, fixtures or mechanical equipment, in any structure, public or private, in the forty-eight States, the District of Columbia, Puerto Rico or the Virgin Islands, except * * * to the extent specifically authorized under paragraph (h). No person shall carry on or participate in any construction, repair work, addition, improvement, conversion, alteration, installation or relocation of fixtures or mechanical equipment prohibited by this order. The prohibitions of this paragraph apply to a person who does his own construction work, to a person who gets a contractor to do the work, to contractors, sub-contractors, architects and engineers working on a job which is being carried on in violation of this order or getting others to work on it or to supply materials for it."

"(h) Authorizations. Persons who wish to begin work which is prohibited by this order may apply for authorization. * * * If work on any other kind of structure is involved, the application should be filed on Form CPA–4423 with the appropriate Construction Field Office of the Civilian Production Administration. Applications will be reviewed to see whether and how much the proposed construction would interfere with the Veterans' Emergency Housing Program. * * * *"

"(i) Construction under authorizations. When a person is specifically authorized, either by approval of Form CPA–4423 * * * or otherwise, to do work restricted by this order, he must observe the restrictions imposed on him by the authorization * * *."

5 50 U.S.C.A.Appendix, 633, Sec. 2(a) (5) "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,-000 or imprisoned for not more than one year, or both."

The sole question raised by this appeal is whether the information states sufficient facts to charge a crime against the United States. In essence, the argument presents two material issues, one, that the facts charged are not a violation of the Order (VHP-1), and the other, that the Order itself is invalid, null and void.

In respect to the former, appellants contend that the information failed to *negative* the following possibilities: (a) that the construction was begun before March 26, 1946 and was therefore not in violation of the terms of the Order, (b) that the "estimated cost at the beginning of the construction" was less than $1,000 and (c) that the construction was a commercial airport. These contentions are without merit. It is not necessary that an information or indictment negative every possibility or combination of facts that could technically be a defense. McKelvey v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301; Rose v. United States, 9 Cir., 149 F.2d 755. It is sufficient if the facts as stated in the information are definite enough so that the defendant may know of what he is charged and so as to protect him from a subsequent prosecution for the same offense. Maloof v. United States, 9 Cir., 159 F.2d 62, cert. denied 67 S.Ct. 1306, and the cases there cited.

Moreover, the plea of nolo contendere gave the district court no opportunity to pass upon these matters. The rule is well settled that where, as here, no Bill of Particulars was requested, and no attack upon the sufficiency of the information was made in the lower court, and where, as here, no prejudice is shown, the information will be deemed sufficient (upon appeal) to have adequately apprised the defendant of what he was charged. After verdict every intendment must be indulged in support of the information. Koa Gora v. Territory of Hawaii, 9 Cir., 152 F.2d 933, cert. denied 328 U.S. 862, 66 S.Ct. 1362, 90 L.Ed. 1632, and cases there cited. These well established rules of law dispose of the first argument.

As to the second issue, it is not contended that either the First or Second War Powers Act is unconstitutional, but appellants assert that the Order (VHP-1) is invalid and void, because it is beyond the powers of the Civilian Production Administration. In support of this proposition they advance three arguments:

First: They contend that the Order (VHP-1) issued by the Administrator is an attempt to exercise the war powers of the Federal Government and since hostilities have ceased any use of the war powers to control a peace time emergency is unconstitutional and void. To bolster this argument they cite the opinion of Justice Holmes in Chastleton Corp. v. Sinclair, 264 U.S. 543, 547, 44 S.Ct. 405, 406, 68 L.Ed. 841 where he said: "A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases * * *."

Assuming without deciding that the powers asserted in VHP-1 are "war powers", the argument of appellants fails in that, although the hostilities have terminated the emergency upon which the First and Second War Powers Acts depend still exists. Fleming v. Mohawk Wrecking & Lumber Co., 67 S.Ct. 1129. It follows, therefore, consistent with the views of Justice Holmes, that the "war powers" could be and properly were exercised in and through the Order (VHP-1) by the Civilian Production Administration.

Second: Appellants contend that the Order (VHP-1) was contrary to the will of Congress as expressed in the War Mobilization and Reconversion Act of 1944, 50 U.S.C.A.Appendix, § 1658(b) wherein Congress specifically directed all executive agencies to "permit the expansion, resumption, or initiation of production for nonwar use whenever such production does not require materials, components, facilities, or labor needed for war purposes * * *." This argument is really but an extension of the first and lacks validity in that it fails to recognize that it is the function of the executive agency to determine *when and if* the "expansion, resumption, or initiation of production for nonwar use" will interfere with war purposes. The Order (VHP-1)

here involved simply makes that determination, and the language referred to by appellants in the War Mobilization and Reconversion Act in no way invalidates the Order.

■ Third: Appellants contend that Executive Order 9638, supra, which created the Civilian Production Administration did not give it the power to issue Order (VHP-1) since Executive Order 9638 provided that the powers given should be exercised to further "a maximum peacetime production in industry *free from wartime Government controls*". We cannot agree. Although the language relied upon is correctly quoted, the emphasis is wrong. The Civilian Production Administration was directed by Executive Order 9638 to "limit the manufacture of products for which materials or facilities are insufficient," and to "allocate scarce materials and facilities necessary for the production of low-priced items essential to the continued success of the stabilization program of the Federal Government". It was the function of the Civilian Production Administration to restrict, where necessary, various forms of production, to secure the maximum *overall* peacetime production and to secure the maximum production of scarce low-cost items, such as housing, necessary to a rapid and smooth transition from war to peace. On March 26, 1946, when VHP-1 was issued, veterans' housing was a "low-priced item, essential to the continued success of the stabilization program of the Federal Government". Under Executive Order 9638, the Civilian Production Administration was empowered to issue Order (VHP-1) and the Order was valid.

Appellants direct our attention to the Veterans' Emergency Housing Act of 1946, 50 U.S.C.A.Appendix, § 1821 et seq., asserting that this Act covers the identical situation and actions here involved and that those situations are not criminal offenses under that Act. This contention is without merit. This statute was not passed until May 22, 1946, and could have no bearing upon the actions of appellants on or about May 1, 1946.

The judgment of the district court is affirmed.