**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James E. OUTLER, Defendant-Appellant.**

**No. 80–7497.**

United States Court of Appeals, Fifth Circuit.*
Unit B

Oct. 26, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

J. Hue Henry, Athens, Ga., David R. Trippe, Atlanta, Ga., for defendant-appellant.

Denver L. Rampey, Jr., U. S. Atty., Miriam D. Wansley, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before MORGAN, KRAVITCH and ANDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant, Dr. James E. Outler, was tried and convicted in United States District

Court for the Middle District of Georgia on twenty counts of violating §§ 841(a) and 844 of the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.* Counts One through Fifteen involved charges of prescribing or, in the language of the CSA, "dispensing" controlled drugs. Counts Sixteen through Twenty charged appellant with unlawful possession of controlled drugs.

Dr. Outler apparently was abusing his status as a duly licensed and registered physician to prescribe Schedule III and IV drugs in Warner Robbins, Georgia. Several undercover agents, acting as patients, were able to obtain prescriptions for controlled drugs after undergoing little or no physical examination. On several occasions, these "patients" told Dr. Outler that the drugs eventually would be given to others, used at parties, or even resold, but Dr. Outler still continued to issue prescriptions. During the course of this investigation, agents concealed microphones and recorded their conversations with appellant. One agent regularly worked for an Atlanta television station but temporarily was working in conjunction with law enforcement officials. She later incorporated many of the taped conversations and other products of the investigation into a two-part television special report. At the close of the investigation, a United States Magistrate issued a search warrant authorizing federal agents to enter Dr. Outler's office and seize any medical records connected with the investigation. Execution of the search warrant followed immediately, and government agents seized Dr. Outler's medical records. During the process, they observed Schedule II controlled drugs in appellant's office. The agents were aware that Dr. Outler previously had surrendered his license to prescribe Schedule II drugs, and accordingly, also seized the drugs. This event resulted in the five possession counts of the indictment. Prior to trial, and again during trial, Dr. Outler moved to sever the fifteen dispensing counts from the five possession counts. He wished to testify as to the possession counts, but remain silent as to the dispensing charges. The trial court denied both motions.

This appeal raises four issues. First, Dr. Outler charges that the trial court erred in denying his motion to dismiss Counts One through Fifteen of the grand jury indictment for failure to charge an offense. Second, he claims that the entire indictment should have been dismissed because of governmental misconduct in the preparation and dissemination of publicity prior to his arrest. Third, he alleges that medical records and Schedule II drugs were illegally seized from his office because the Magistrate who issued the search warrant was not neutral and detached. Finally, Dr. Outler charges that the trial court's refusal to sever Counts One through Fifteen from Counts Sixteen through Twenty unduly prejudiced his defense. We must agree with appellant on the first issue and reverse the court below. We affirm the trial court's rulings on the remaining issues.

## I. *The Indictment*

Appellant claims that Counts One through Fifteen of his indictment, the dispensing charges, omit an essential element of the crime, and thereby fail to charge an offense under 21 U.S.C. § 841(a). This claim is based on the omission of any language alleging that Dr. Outler prescribed drugs without a legitimate medical reason or beyond the course of professional practice. Each count is virtually identical for purposes of this appeal. Count One states:

That on or about October 12, 1979, in the Macon Division of the Middle District of Georgia, and within the jurisdiction of this Court, James E. Outler did unlawfully and intentionally distribute, dispense, and caused to be distributed and dispensed, a quantity of benzphetamine in the form of Didrex tablets, a Schedule III drug, by means of a prescription to Rita Bragg, in violation of 21 United States Code, Section 841(a).

Appellant moved for dismissal of these counts prior to trial and the motion was denied. At trial, however, the prosecution introduced sufficient evidence to prove that each prescription lacked a legitimate medical reason, and the jury instructions included this element and charged the prosecution with the burden of proof. Therefore, the

question before us is narrow: Whether a grand jury indictment which charges a physician with prescribing drugs in violation of 21 U.S.C. § 841(a) must allege that the prescription lacked a legitimate medical reason? The question is one of first impression to this court.[1] Other circuits have reached inconsistent results.[2] For the following reasons, we believe that the lack of a legitimate medical reason is an essential element of this offense, and therefore must be alleged in the indictment.

Congress enacted the CSA in 1970 in order to strengthen federal control over illegal drug traffic. Accordingly, the CSA contains a blanket prohibition against any transaction which involves a controlled substance: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." 21 U.S.C. § 841(a)(1). Of course, legitimate drug manufacturers and various professionals, such as licensed physicians and pharmacists, are authorized once they have registered with the Attorney General. "Persons registered by the Attorney General . . . to manufacture, distribute, or dispense controlled substances are authorized to possess, manufacture, distribute, or dispense such substances . . . to the extent authorized by their registration . . . ." 21 U.S.C. § 822(b). A strict reading of these two sections of the CSA would authorize a physician to prescribe drugs freely and without medical reason so long as the physician is registered with the Attorney General; however, the CSA has not been interpreted so mechanically.

In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Supreme Court held that a physician may be charged with a criminal violation of § 841(a) of the CSA whenever he or she prescribes a controlled substance without a legitimate medical reason. The physician is criminally liable even though registered with the Attorney General and seemingly authorized under § 841(a). The court noted that the qualifying condition of the offense, *i. e.*, the element of behavior beyond professional practice, was not expressly stated in the relevant sections of the CSA, but rather, "implicit" to the statutory scheme. *United States v. Moore*, 423 U.S. at 141, 96 S.Ct. at 345. The decision did not address the questions of indictment and burden of proof. This court, however, repeatedly has held since *Moore* that it is incumbent upon the government to prove the lack of a legitimate medical reason in order to convict a registered physician of dispensing drugs in violation of 21 U.S.C. § 841(a). *United States v. Rosen*, 582 F.2d 1032 (5th Cir. 1978); *United States v. Rogers*, 609 F.2d 834 (5th Cir. 1980); *United States v. Guerrero*, 650 F.2d 728 (5th Cir. 1981). We now conclude that this element is essential to a charge of the offense. We recognize that an element is not always an "essential element" simply because the prosecution carries the burden of proof; however, here the element embodies the culpability of the offense. Without behavior beyond professional practice, there is no crime. We believe, therefore, that the lack of a legitimate medical reason is as essential to the offense charged against Dr. Outlar as the requisite *mens rea*.

The United States Attorney responds that the lack of a legitimate medical reason is not an essential element. The government argues instead that the *presence* of a legitimate medical purpose is a statutory exception to the general offense stated in 21 U.S.C. § 841(a).[3] The language of the

---

**1.** In *United States v. Jackson*, 576 F.2d 46 (5th Cir. 1978), we noted the issue but left its resolution "to another day."

**2.** In *United States v. King*, 587 F.2d 956 (9th Cir. 1978), the Ninth Circuit held that the allegation is necessary in order to charge a physician with illegal prescriptions in violation of 21 U.S.C. § 841(a); however, in *United States v. Roya*, 574 F.2d 386 (7th Cir.), *cert. denied*, 439

U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978), the Seventh Circuit reached the opposite result.

**3.** The distinction is very significant. Generally, a statutory exception to an offense need not be alleged in the indictment and the burden of proving compliance with the exception is upon the defendant. *McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922). If in this case the presence of a legiti-

CSA apparently is constructed in this manner.[4] We note, however, that an essential element is not always expressed in the statutory definition of the offense, but actually may be the negation of an exception to the offense. In rare instances, an exception can be so necessary to a true definition of the offense that the elements of the crime are not fully stated without the exception. *Sutton v. United States,* 157 F.2d 661, 666 (5th Cir. 1946). We believe this to be the case whenever a physician is charged with prescribing drugs in violation of 21 U.S.C. § 841(a).

■ There is no question that a grand jury indictment must set forth each essential element of an offense in order for a resulting conviction to stand. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Huff,* 512 F.2d 66 (5th Cir. 1975); *United States v. Varkonyi,* 645 F.2d 453 (5th Cir. 1981). This well settled rule serves a dual function. First, the Sixth Amendment to the Consti-

tution requires that every criminal defendant "be informed of the nature and cause of the accusation." Inclusion of the essential elements of an offense in an indictment provides the accused with the bare minimum of information necessary to meet this requirement.[5] Second, the Fifth Amendment guarantees the right of a grand jury indictment to each defendant prosecuted for an "infamous", or serious, crime. A grand jury can perform its function of determining probable cause and returning a true bill only if all elements of the offense are contained in the indictment.[6] *Russell v. United States,* 369 U.S. at 771, 82 S.Ct. at 1051; *United States v. Diecidue,* 603 F.2d 535, 546 (5th Cir. 1979).

We note, however, that if the Sixth Amendment requirements were the sole basis for this rule, then appellant would not succeed on appeal. The purpose of the Sixth Amendment guarantee is to allow the defendant to prepare a full defense and insure that he is not surprised at trial.

mate medical purpose is a statutory exception to 21 U.S.C. § 841(a), then the burden of proving compliance with the exception properly could be placed upon a physician-defendant. In other words, a grand jury properly could return an indictment against any doctor for prescribing a controlled drug, and the doctor always would have the burden at trial of proving the prescription was based on a legitimate medical need. The effect of this scheme would be a presumption that every physician who prescribes a drug does so without a legitimate medical reason. We do not believe Congress intended this result.

4. "Implicit in the registration of a physician is the understanding that he is authorized only to act 'as a physician'." *United States v. Moore,* 423 U.S. at 141, 96 S.Ct. at 345. Federal law preceeding the CSA clearly was constructed in this way; an exception to the general prohibition expressly covered "practitioners licensed by law to prescribe . . . drugs, *while acting in the course of their professional practice* (emphasis added)." Federal Food, Drug, and Cosmetic Act, § 511(a)(4), 79 Stat. 228.

The United States Attorney mistakenly relies upon our decision on this same question under the earlier Act. In *United States v. Ramzy,* 446 F.2d 1184 (5th Cir.), *cert. denied,* 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 544 (1971), we concluded that the presence of a legitimate medical reason was an affirmative defense provided in a statutory exception. However, we already have refused to apply the rationale of *Ramzy* to the CSA. In repeated decisions, we have held

that the prosecution must prove the lack of a legitimate medical reason. Unlike our decision in *Ramzy,* the presence of a legitimate medical reason is not an affirmative defense under CSA. *See, e. g., United States v. Rogers,* 609 F.2d 834 (5th Cir. 1980).

5. Of course, more than the essential elements of an offense is usually necessary. The defendant must be informed of which transaction, or facts, give rise to the alleged offense. Moreover, the indictment must contain enough information to show the defendant to what extent he may plead "double jeopardy" if further proceedings are instituted. *See Russell v. United States,* 369 U.S. at 763–4, 82 S.Ct. at 1046–47.

6. The government contends in the alternative that the words "unlawfully" and "by means of a prescription" in Dr. Outler's indictment are sufficient to substitute for "lack of a legitimate medical reason." We disagree. An "unlawful prescription" is not synonymous with a "prescription lacking a legitimate medical purpose." The wording of this indictment could serve to charge a physician with failure to obtain a license or registration. We recognize, however, that there are no specific words necessary to phrase this element. *See, e. g., United States v. Jackson,* 576 F.2d 46 (5th Cir. 1978) ("under the guise and artifice of operating a 'mental health clinic'" is sufficient to charge this element of the offense).

*Russell v. United States,* 369 U.S. at 763–4, 82 S.Ct. at 1046–47. Dr. Outler cannot claim that he was surprised at trial or unduly prejudiced in the preparation of his defense. The record below convinces us that Dr. Outler was fully aware of the charges against him several weeks before trial.[7] It is the Fifth Amendment guarantee with which we are concerned. Unless every element of an offense appears in the indictment, it is impossible to assure the defendant that a grand jury properly determined probable cause of the offense. *See Honea v. United States,* 344 F.2d 798 (5th Cir. 1965). We have little doubt that the grand jury in this case still would have returned a true bill against the appellant if the indictment had been constructed properly. Moreover, each member of the grand jury most likely considered the very element which is fatally omitted. An indictment against a physician for unlawfully prescribing drugs naturally will raise a question in the minds of most people as to the legitimacy of the physician's conduct. However, we cannot speculate. "To allow . . . a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guarantee of the intervention of a grand jury was designed to secure." *Russell v. United States,* 369 U.S. at 770, 82 S.Ct. at 1050.

## II. *Prosecutorial Misconduct*

Appellant argues that his entire indictment should have been dismissed because of governmental misconduct during and after the investigation of his medical practice. This argument centers on the apparent complicity between law enforcement officials and the news media in generating adverse publicity toward appellant prior to his indictment and arrest.

One of the undercover agents who participated in the investigation of Dr. Outler regularly worked as a reporter for an Atlanta television station, one hundred miles from appellant's community. The record is not clear as to how the reporter became involved in the investigation, although it is clear that federal law enforcement officials were aware of her occupation. As a reporter, she obtained several of the secretly taped conversations that were part of the investigation and incorporated them into a two-part television "special report" on unethical doctors. This report specifically discussed Dr. Outler and reviewed his past criminal activity. One Georgia Bureau of Investigation agent who was interviewed for the report described Dr. Outler's actions as "slimy behavior" and "criminal behavior." Other evidence gathered in the investigation also appeared on television. The report was broadcast in Atlanta within one week after the execution of the search warrant, and before an indictment was submitted to a grand jury. Prior to trial, appellant vigorously objected to this activity as inherently prejudicial to his case, although he never requested a change of venue. The trial judge, obviously aware of possible bias, conducted a careful and thorough examination of prospective jurors during *voir dire* and made every effort to insure the empaneling of an impartial petit jury. Indeed, appellant now concedes that he suffered no prejudice at trial.

Generally, a conviction will be reversed because of prejudicial publicity only if the defendant can demonstrate actual petit jury prejudice. *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Calley v. Callaway,* 519 F.2d 184 (5th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976). In the present case, appellant admits that no actual prejudice occurred, but instead requests that we invoke our supervisory powers over federal law enforcement officials and dismiss appellant's indictment because of governmental involvement in the publicity. We do not believe this situation necessitates such a drastic action. It is not our intent, however, to belittle appellant's argument and approve the conduct of this investiga-

---

7. For example, three weeks before trial appellant first moved to dismiss Counts One through Fifteen of the indictment for failure to allege that the prescriptions were issued without a legitimate medical reason. Obviously, he was aware this element was at issue.

tion. We admonish federal law enforcement officials in this circuit from similar behavior in the future. If there were any doubt as to the impartiality of the petit jury in this case, we would reverse. The deliberate use of a news-reporter as an undercover agent in an investigation by federal law enforcement officials, coupled with resulting adverse publicity prior to an arrest and trial, is inconsistent with our notions of due process and unnecessarily endangers a defendant's right to a fair trial.

### III. *The Search Warrant*

■ Appellant's third claim on appeal is that various medical records and Schedule II drugs were illegally seized from his office. This claim is premised on appellant's belief that the Magistrate who issued the search warrant was not neutral and detached. We cannot agree with the argument.

Dr. Outler is not a stranger to federal courts. In July of 1974, he pled guilty in district court to income tax evasion and was sentenced to five years imprisonment. All but sixty days of this sentence was to be served on probation. In October of 1975, an investigation began into the legitimacy of Dr. Outler's medical practice. A probation revocation hearing was held in February of 1977, and the trial judge determined that Dr. Outler was prescribing Schedule II drugs without a legitimate medical purpose. At this point Dr. Outler surrendered his Schedule II license, and his probation was revoked for six months. One of the Assistant United States Attorneys who represented the government at the probation revocation hearing was John D. Carey. In October of 1979, almost three years after this hearing, a second investigation into appellant's medical practice began. In November of 1979, United States Magistrate John D. Carey issued a search warrant for Dr.

Outler's office which was based on information gathered exclusively during the second investigation. Magistrate Carey had left the United States Attorney's office approximately two years earlier, and he took no part in the second investigation of Dr. Outler, or the trial below, other than to issue the search warrant. Appellant contends now that Magistrate Carey was obligated to disqualify himself when presented with the search warrant because of his role as prosecutor in the earlier probation revocation hearing. Appellant specifically relies on 28 U.S.C. §§ 455(a), 455(b)(1), and 455(b)(3).[8] We believe none of these sections compelled Magistrate Carey's disqualification.

Section 455(a) establishes a reasonable man standard. *Whitehurst v. Wright*, 592 F.2d 834, 838 (5th Cir. 1979). In other words, is there a sufficient basis for a reasonable man to believe that Magistrate Carey was not impartial when he issued the search warrant, and therefore obligated to disqualify himself? We find that such a basis does not exist in this instance. The affidavit presented to Magistrate Carey in support of this search warrant contained information which was overwhelmingly sufficient to indicate probable cause. The drugs, agents, dates, and all other details set forth in the affidavit were wholly independent of the events involved in the earlier probation revocation hearing. There clearly was no connection between the two proceedings. Absent other factors, there is no reason to believe Magistrate Carey did not act impartially.

■ Sections 455(b)(1) and 455(b)(3) are not applicable to this situation. The former contemplates a personal, or extra-judicial, bias against a litigant. *See In Re Corrugated Container Antitrust Litigation*, 614 F.2d 958 (5th Cir. 1980). Appellant has

---

**8.** 28 U.S.C. § 455 states in part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowl-

edge of disputed evidentiary facts concerning the proceeding;

. . . . .

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy. . . .

made no such claim on appeal. The latter section is applicable only when the two proceedings have a common, single transaction or event at issue. *See Mixon v. United States,* 620 F.2d 486 (5th Cir. 1980). There was no connection between appellant's probation revocation hearing in 1977 and the investigation of his medical practice in 1979. No single fact or event was common to both proceedings. Accordingly, Magistrate Carey was not required to disqualify himself from issuing the search warrant in question, and all evidence was properly seized and admitted.

IV. *Severance*

■ Appellant's final claim is that the trial judge erred in refusing to sever the dispensing counts from the possession counts. Appellant cites two reasons for the error. First, Dr. Outler wished to give testimony concerning the possession counts but remain silent as to the dispensing counts. He claims that the refusal to sever forced him to choose his right to remain silent over his right to testify, and the result unduly prejudiced his defense. Second, Dr. Outler contends that the failure to sever resulted in cross-count prejudice. As a preliminary step, we find as a matter of law that the initial joinder of the possession counts and the dispensing counts in Dr. Outler's indictment was appropriate under Rule 8 of the Federal Rules of Criminal Procedure. *See. United States v. Park,* 531 F.2d 754, 761 (5th Cir. 1976). The separate question of whether to sever the counts of this indictment pursuant to Rule 14 of the Federal Rules of Criminal Procedure was a matter of discretion for the trial judge. *Id.* The trial judge must balance any possible prejudice to the defendant against judicial economy. *United States v. Forrest,* 623 F.2d 1107, 1115 (5th Cir.), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980). "Absent a showing by defendant of abuse of that discretion, an appellate court will not substitute its own judgment for that of the lower court." *United States v. Cuesta,* 597 F.2d 903, 919 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). Dr. Outler has not met this burden of proof on either of his claims.

■ "Severance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others." *Alvarez v. Wainwright,* 607 F.2d 683, 685 (5th Cir. 1979). The defendant must give the trial judge enough information to prove that he has both important testimony to give on one offense and a strong need to refrain from testifying on the other. *Id.* at 686. At trial, Dr. Outler wanted to testify that he was unaware Schedule II drugs remained in his office after he surrendered his license to prescribe these drugs. However, this same testimony was given by another defense witness, Dr. Outler's nurse, and we believe the jury naturally assumed that Dr. Outler would corroborate the favorable testimony of his own witness. Dr. Outler failed at trial and on appeal to explain how his own testimony would substantially further his defense other than to duplicate the testimony of another witness. Moreover, Dr. Outler has made no explanation as to why it was important for him to remain silent as to the dispensing charges, other than express his desire to do so. Therefore, the trial judge did not abuse his discretion in refusing to grant a severance because of appellant's desire to testify only on the possession charges.

Appellant's pre-trial motion to sever did not allege the possibility of cross-count prejudice. Even now, he only can cite to one instance at trial where he believes cross-count prejudice occurred, and this argument is difficult to comprehend. The trial court properly admitted into evidence the fact that Dr. Outler previously had surrendered his Schedule II license as relevant to the issue of knowledge and intent on the dispensing counts. *See United States v. Park,* 531 F.2d at 762. However, the trial judge later repeated this evidence while charging the jury on the possession counts. Appellant somehow perceives this as cross-count prejudice. We cannot agree. The evidence is relevant and not prejudicial to either offense. The jury was never informed of the circumstances surrounding the surrender of Dr. Outler's Schedule II license. We find the record void of any cross-count prejudice, and therefore free of error.

For the above reasons, we reverse the district court below in part. Counts One through Fifteen of appellant's indictment are insufficient to charge an offense. We affirm the trial court's ruling on all other issues.

REVERSED IN PART AND AFFIRMED IN PART.