[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14272
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-10071-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO ESPILDORA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 18, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Ricardo Espildora appeals his convictions and sentences for conspiracy to encourage and induce aliens to enter the United States, encouraging and inducing aliens to enter the United States, and failure to obey an order (heave to) by law enforcement officers. Espildora argues that the district court abused its discretion in denying his motion to sever and imposed a procedurally and substantively unreasonable sentence. For the reasons set forth below, we affirm.

**I.**

Espildora pled not guilty to conspiracy to encourage and induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), ("Count 1"); encouraging and inducing aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), ("Counts 2-21"); and failure to obey an order by law enforcement officers, in violation of 18 U.S.C. § 2237(a)(1), ("Count 22").

Prior to trial, Espildora filed a motion to sever Count 22 from Counts 1 through 21 and to hold a separate trial on Count 22. Espildora explained that the government alleged that, on May 27, 2008, he and a codefendant were aboard a vessel carrying 20 undocumented Cuban migrants. The vessel stopped when approached by a United States Coast Guard vessel. With respect to the June 15, 2008 incident underlying Count 22, Espildora stated that, according to the government, Espildora was the sole crew member of a vessel that fled at a high rate

2

of speed when approached by a Coast Guard cutter. Espildora argued that the facts alleged in Counts 1 through 21 were substantially different than those alleged in Count 22. He also asserted that he would not receive a fair trial if the counts were tried together, because he intended to testify with respect to Counts 1 through 21 but remain silent with respect to Count 22. He explained that he was the only witness that could explain his presence on board the vessel on May 27th, because his codefendant was a fugitive and the 20 Cuban migrants on board had been returned to Cuba.

The government responded that Espildora had told a boarding officer that he had rescued the Cuban nationals on board the vessel on May 27th, and that Espildora could assert a "rescue defense" by calling those boarding officers to testify at trial. The government also argued that evidence of the June 15th incident was admissible to establish Espildora's intent to commit Counts 1 through 21.

The district court denied Espildora's motion to sever, finding that the evidence of the June 15th incident "would have come in[,] even had it not been charged[,] as 404(b) evidence because of its similarity and temporal proximity. He would put his intent in issue and this goes to intent."

At trial, Brian Chapman, a Lieutenant with the United States Coast Guard, testified that, on May 27, 2008, he boarded a vessel that was "grossly overloaded."

Espildora identified himself as the master of the vessel, which had 20 Cuban nationals on board. During an inventory of the vessel, Chapman found items typically located on vessels used to smuggle illegal aliens into the southeast United States. On cross-examination, Chapman noted that Espildora told him that the 20 migrants had been stranded on Cay Sal and he picked them up to take them to Miami.

Gavin Valdes Garcia, a Lieutenant in the United States Coast Guard, testified that, on June 15, 2008, he was working on the Coast Guard cutter Kingfisher, which was directed to intercept a target of interest. The Kingfisher located the target, but when it got within 300 to 400 yards, the target made a sharp U-turn and sped up. The Kingfisher followed the target, activated its blue law enforcement lights, and announced "this is the United States Coast Guard, stop the vessel." It also called to the target in English and Spanish via radio. Garcia stated that the words "U.S. Coast Guard" were written on both sides of the Kingfisher and were visible from 300 to 400 yards away. While pursuing the target vessel, Garcia noticed "four gas cans, seven life jackets, . . . an oil can and a blow-up beach raft" in the target vessel's wake. A second Coast Guard vessel was dispatched and eventually stopped the target.

George Spriggs, a Coast Guard Boatswain Mate, testified that, on June 15th,

4

2008, he boarded the vessel the Kingfisher had been chasing. Espildora identified himself as the operator of the vessel. Spriggs found a large number of life jackets and bottled water on the vessel, as well as two hoses that were thought to be used to transfer fuel.

After the witnesses testified, Espildora moved to sever Count 22 from Counts 1 through 21. The court denied the motion. Espildora also moved for a mistrial based on improper joinder of Count 22 with Counts 1 through 21, arguing that he would have testified if the counts had been severed. The court noted that Espildora had the choice of whether or not to testify. The jury subsequently found Espildora guilty on all counts.

The presentence investigation report ("PSI") grouped the alien smuggling counts (Counts 1-21) separately from the "failure to heave to" count (Count 22). With respect to the alien smuggling counts ("Group One"), Espildora was subject to a total offense level of 18, which included an increase under U.S.S.G. § 2L1.1(b)(6), based on the fact that Espildora intentionally or recklessly created a substantial risk of death or serious bodily injury by having 20 Cuban migrants but only 12 personal flotation devices on board.

With respect to Count 22 ("Group Two"), Espildora was subject to a total offense level of 12, which included a two-level increase, pursuant to § 3C1.2,

5

because Espildora recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Application of a multiple count adjustment under § 3D1.4 resulted in a combined adjusted offense level and a total offense level of 19.

Espildora received three criminal history points based on prior offenses for driving with a suspended license and habitually driving with a suspended license. He received two additional criminal history points because he committed the present offense while on probation for the habitual offender offense. Espildora's five criminal history points placed him in criminal history category III. His offense level of 19 combined with criminal history category III to yield a guideline imprisonment range of 37 to 46 months. The PSI noted that Espildora had a pending charge of grand larceny. It stated that, on November 4, 2008, the United States Coast Guard intercepted a vessel worth $200,000 that had been reported as stolen. Espildora was located on the vessel, in the company of an individual named Sergio Yero and 15 Cuban migrants. Neither Espildora nor Yero had permission to be in possession of the vessel. Neither party filed objections to the PSI.

At sentencing, Espildora confirmed that he had no objections to the PSI. He stated that he had learned from his mistakes and asked the court to be lenient so

that he could move forward with his life and get back to his family.

Espildora's counsel noted Espildora had pled not guilty in his pending grand larceny case, which involved a separate incident that occurred approximately six months after the offenses for which Espildora was being sentenced. Counsel pointed out that Espildora effectively had received four criminal history points for the habitual driving with a suspended license offense, including the two points he received for committing the offense while on probation, and asked the court to impose a sentence of 37 months' imprisonment.

The court stated that it was required to consider the 18 U.S.C. § 3553(a) sentencing factors, including the nature and circumstances of the offense. It noted that, during the May 27th offense, there was an insufficient number of personal flotation devices on board the vessel, which created a substantial risk of death or serious bodily injury. The court also pointed out that less than two months after the indictment in the present case was returned, Espildora was "back on the high seas this time with a stolen $200,000 vessel near Mexico with 15 Cuban migrants." The court acknowledged that the charge was still pending, but stated, "unless I was dropped in here from another planet this has all the earmarks of another smuggling venture." The court noted that it had considered the nature and circumstances of the offense; Espildora's personal history and characteristics; the need for the

7

sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need for adequate deterrence; and the need to protect the public. It also stated that it had considered the parties' statements, the PSI, and the advisory guidelines. The court sentenced Espildora to 60 months' imprisonment on Counts 1 through 22, to be served concurrently, followed by a 3-year term of supervised release. Espildora objected to "the upward variance from the advisory sentencing guidelines range and the application of the 3553(a) factors to the case."

## II.

### *Motion to Sever*

We review a district court's ruling on a severance motion for abuse of discretion. *United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006). "To reverse a conviction because of an improper denial of a severance, a defendant must carry the heavy burden of demonstrating that he suffered compelling prejudice and received an unfair trial." *Id.* at 858-59 (quotations omitted).

Rule 14(a) of the Federal Rules of Criminal Procedure provides that, "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court *may* order separate trials of counts . . . or provide any other relief that justice requires."

Fed.R.Crim.P. 14(a) (emphasis added). "[S]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others." *United States v. Hersh*, 297 F.3d 1233, 1243 n.15 (11th Cir. 2002). Instead, to show that the joinder prevented him from testifying, the defendant "must show that the charges were distinct in time, place, and evidence, that there was 'important' evidence that he might have offered on one set of charges but could not, and that he had a 'strong need' not to testify on the other counts." *Id.* "The defendant must give the trial judge enough information to prove that he has both important testimony to give on one offense and a strong need to refrain from testifying on the other." *United States v. Outler*, 659 F.2d 1306, 1313 (11th Cir. 1981).

In *Outler*, which involved violations of the Controlled Substances Act, we upheld the district court's denial of Outler's motion to sever "possession" counts from "prescription" counts, even though Outler indicated that he wished to testify with respect to the possession counts, but remain silent with respect to the prescription counts. *Id.* In holding that the district court did not abuse its discretion, we emphasized that the testimony Outler wished to present on the possession counts was admitted into evidence through another witness's testimony. *Id.* We also noted that Outler failed to explain why it was important for him to

remain silent on the prescription counts. *Id.*

Here, the district court did not abuse its discretion in denying Espildora's severance motion, because Espildora's situation was nearly identical to the situation involved in *Outler*. Although Espildora showed that Count 22 involved conduct that was distinct in time, place, and evidence, from the conduct underlying Counts 1 through 21, *see Hersh*, 297 F.3d at 1243 n.15, he failed to establish that joinder of the counts would prevent him from offering important evidence on Counts 1 through 21, and that he had a "strong need" not to testify on Count 22. *See id*; *Outler*, 659 F.3d at 1313. In his original motion to sever, Espildora did not explain what "important evidence" he planned to present on Counts 1 through 21, but simply asserted that he was the only person that could testify about his reasons for being present on the vessel on May 27th. Prior to trial, the government indicated that Espildora wished to testify that he had "rescued" the 20 Cuban migrants from Cay Sal on May 27th. However, this evidence was ultimately introduced at trial through the testimony of Chapman, who stated, on cross-examination, that Espildora had told him that he had picked up the 20 Cuban migrants after finding them stranded on Cay Sal. Thus, Espildora did not suffer compelling prejudice from the denial of his severance motion, because the evidence he sought to offer through his own testimony was ultimately introduced

10

at trial through the testimony of another witness.  *See Outler*, 659 F.3d at 1313.

Moreover, although Espildora stated that he wished to remain silent on Count 22, he never explained why he had a "strong need" to remain silent on this count.  *See Hersh*, 297 F.3d at 1243 n.15; *Outler*, 659 F.3d at 1313.  Accordingly, the district court did not abuse its discretion in denying Espildora's motion to sever Counts 1 through 21 from Count 22.

### *Reasonableness of Sentence*

We review the final sentence imposed by the district court for reasonableness under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).  The district court must impose a sentence that is both procedurally and substantively reasonable.  *Id.*  Sentencing arguments raised for the first time on appeal are reviewed for plain error.  *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  To establish plain error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights.  *Id.*  We may exercise our discretion to correct a plain error if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.*

A sentence may be procedurally unreasonable if the district court improperly calculates the guideline range, treats the Sentencing Guidelines as mandatory

11

rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. In its consideration of the § 3553(a) factors, the district court does not need to discuss or state on the record each factor explicitly. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, an acknowledgment by the district court that it has considered the defendant's arguments and the § 3553(a) factors will suffice. *Id.* at 1329-30.

Review of a sentence for substantive reasonableness involves examining the totality of the circumstances, including whether the § 3553(a) factors support the sentence in question. *Gall*, 552 U.S. at 49-50, 128 S.Ct. at 596-97. Pursuant to § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]," namely, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from future crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care. 18 U.S.C. § 3553(a). The sentencing court must also consider the following factors in determining a particular sentence: the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the guideline range, the pertinent policy

12

statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *See* U.S.S.G. § 3553(a)(1), (3)-(7). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

If a defendant's sentence is outside the applicable guideline range, the district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50, 128 S.Ct. at 597. On appeal, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51, 128 S.Ct. at 597.

As an initial matter, Espildora argues for the first time on appeal that the district court should not have considered the facts underlying his pending grand larceny charge in determining a reasonable sentence. Because Espildora did not object to the inclusion of this pending charge in the PSI or otherwise raise this issue before the trial court, we review the issue for plain error. *See Rodriguez*, 398 F.3d at 1298. Espildora has failed to show that the court plainly erred in considering the November 2008 incident, because a sentencing court may consider

13

conduct for which the defendant has not been convicted, as long as (1) the conduct is proven by a preponderance of the evidence and (2) the sentence imposed does not exceed the relevant statutory maximum. *See United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir. 2006) (permitting the court to consider conduct for which the defendant had been acquitted); *United States v. Fleming*, 849 F.2d 568, 569 (11th Cir. 1988) (permitting the court to consider conduct for which the defendant had not yet been charged). Here, Espildora did not object to the PSI's factual statement that he had been located on a vessel with 15 Cuban migrants; therefore, this fact was deemed admitted. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) (providing that "a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes"). Espildora's 60-month sentence was also far below the 115-year (1380-month) statutory maximum sentence he could have received. *See* 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(B)(i) (providing for a 10-year statutory maximum on Count 1); 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(B)(ii) (providing for a 5-year statutory maximum on Counts 2 through 21); 18 U.S.C. § 2237(a)(1), (b) (providing for a 5-year statutory maximum on Count 22); 18 U.S.C. § 3584(a) (providing that sentences may run consecutively if multiple terms of imprisonment are imposed on a defendant at the same time). Accordingly, the district court did not err in considering the November 2008 incident at sentencing.

14

Espildora's sentence was procedurally reasonable, because the district court properly calculated Espildora's guideline range, treated the guidelines as advisory, and considered the § 3553(a) sentencing factors, the PSI, and the parties' arguments. *See Gall*, 552 U.S. at 51, 128 S.Ct. at 597. The court also adequately explained its reasons for imposing the 60-month sentence, specifically noting that the vessel used in the May 27th incident contained an insufficient number of personal flotation devices, and that Espildora was involved in yet another smuggling venture, for which he did not receive criminal history points, shortly after he was indicted for the present offenses.

Espildora's sentence was also substantively reasonable, because the specific factors mentioned by the court – the nature and circumstances of Espildora's offense, his personal history, the need to reflect the seriousness of the offense and promote respect for the law, the need for deterrence, and the need to protect the public – support the upward variance. The need to protect the public is emphasized by the fact that both the May 27th and June 15th offenses created a substantial risk of bodily injury, and Espildora continued to participate in alien smuggling ventures after his May 27th arrest. The fact that Espildora fled from the Coast Guard on June 15th, two weeks after his initial arrest, coupled with the fact that Espildora was located on a stolen vessel in the presence of 15 Cuban nationals

15

in November 2008, only two months after the return of the indictment, indicates that a substantial sentence was necessary to reflect the seriousness of the offense, promote respect for the law, and provide deterrence.  We also note that Espildora was charged with 20 counts of encouraging and inducing aliens to enter the United States.  As discussed above, Espildora could have faced a total statutory maximum sentence of 115 years, (1380 months).  The 60-month sentence he actually received was far below the applicable statutory penalties.  *United States v. Valnor*, 451 F.3d 744, 751-52 (11th Cir. 2006) (affirming an upward variance and observing that the ultimate sentence was appreciably below the statutory maximum).  Accordingly, Espildora has failed to show that his 60-month total sentence was procedurally or substantively unreasonable, and we affirm Espildora's convictions and sentences.

**AFFIRMED.**

16